UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STACY PERACCHIO AND JAMES PERACCHIO )<br>    Plaintiffs )<br> )<br> )<br>v. )<br> )<br>CAR NATION LLC AND SEASONS )<br>FEDERAL CREDIT UNION )<br>    Defendants )<br>_____ ) | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br><br><br><br>AUGUST 1, 2014 |

## COMPLAINT

### INTRODUCTORY ALLEGATIONS

1.  This is a suit brought by Stacy Peracchio and James Peracchio under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* the Magnuson/Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, Article 2 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.,* and the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.,* against Car Nation LLC ("Car Nation"), a car dealership. Defendant Seasons Federal Credit Union ("Seasons") as holder of the contract, is liable to Plaintiffs pursuant to the contract terms and by operation of Conn. Gen. Stat. § 52-572g for all claims, excluding the TILA claim.

2.  Plaintiffs are married and are natural person residing in Middletown, Connecticut, and they are "consumers" as that term is defined in §2301(3) of MMWA.

3.  Car Nation is a Connecticut limited liability company that operates a motor vehicle dealership in Middletown, Connecticut. It is a licensed car dealership and is a warrantor as that term is defined in §2301(5) of MMWA.

4.  Seasons is a federal credit union with its principal offices in Middletown, Connecticut.

5.  Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640, 15 U.S.C. § 2310(d)(1)(B), and 28 U.S.C. § 1367.

6.  This Court has jurisdiction over the defendants because they are located in Connecticut and regularly do business in this state.

7.  Venue in this Court is proper, because the transaction alleged herein occurred in Connecticut.

**FACTUAL ALLEGATIONS**

8.  On or around September 12, 2013, Plaintiffs visited Car Nation for the purpose of purchasing a vehicle for their personal, family, and household use.

9.  Plaintiffs selected and agreed to purchase a 2006 Lincoln Navigator (the "Vehicle") for a cash price of $13,990, and Car Nation agreed to sell them the Vehicle for that price.

10. Their agreement was memorialized in a purchase order, and Plaintiffs paid a $200 deposit.

11. The purchase order provided that, prior to delivery of the Vehicle, Car Nation would make certain repairs to the Vehicle, including fixing a broken running board on the right side.

12. Plaintiffs desired to trade-in a 2007 Audi A-6 (the "Trade-In") on which they owed a balance of approximately $14,400.

13. Car Nation informed Plaintiffs that the Trade-In had a trade-in value of $12,000+, an amount that Plaintiffs agreed to accept.

14. Plaintiffs returned to Car Nation on September 18, 2013 for purposes of completing the sale.

15. Plaintiffs paid an additional $2,300 towards the purchase price at that time, bringing their total down payment to $2,500.

16. Car Nation prepared a final purchase order, a retail installment contract, and other documents (the "Contract Documents") to implement the purchase, financing, and registration of the Vehicle and to transfer ownership of the Trade-In.

17. The Contract Documents contained false and fraudulent information in multiple respects, as follows:

   a. The purchase price of the Vehicle was listed as $16,990 rather than the agreed upon price of $13, 990.

   b. The allowance for the Trade-In was listed as $14,400 rather than the agreed upon allowance amount.

   c. The down payment was listed as $1,000, although Plaintiffs paid Car Nation $2,500.

   d. The itemization of the amount financed included a $750 charge for a "GAP Contract", although no GAP Contract was provided.

   e. The itemization of the amount financed included a $2,190 charge for a "warranty" and, although Plaintiffs were provided with a brochure and

declarations for a service contract, no actual contract containing the terms and conditions of coverage was provided.

18. Car Nation provided an express limited warranty that the Vehicle would be mechanically operational and sound for a period of 60 days or 3,000 miles.

19. Unbeknownst to Plaintiffs, the Vehicle was in unmerchantable condition and was not safe to drive due to extensive frame corrosion.

20. Additionally, unbeknownst to Plaintiffs, the right side running board had been replaced with a salvage part that was not suitable for use on the Vehicle and the mounting bracket was cracked, causing the running board to flex when stepped upon.

21. Plaintiffs accepted delivery of the Vehicle unaware of the defects.

22. This failure to discover the defects was due to the fact that the frame corrosion could only be observed if the Vehicle were on a lift or by looking under the Vehicle.

23. This failure to discover the defects was also due to Car Nation's assurance that the Vehicle had passed a safety check.

24. Specifically, Car Nation provided Plaintiffs with a Connecticut DMV K-208 form in which it reported that the Vehicle's frame had been inspected and had passed.

25. Car Nation either recklessly and fraudulently completed the K-208 form without having performed the inspection, or it fraudulently and maliciously reported that the Vehicle had passed an inspection under circumstances when any mechanic would have recognized that the Vehicle was not roadworthy due to the significant frame corrosion.

26. Plaintiffs discovered the defects approximately nine months later, when James Peracchio brought the Vehicle to a Firestone franchise in Cromwell, Connecticut to replace the tire and an employee showed him the corrosion.

27. Plaintiffs brought the Vehicle to Car Nation, who agreed to perform repairs.

28. Plaintiffs were required to rent a Vehicle for their vacation at a cost of approximately $1,100.

29. After Car Nation returned the Vehicle to Plaintiffs, they engaged an independent auto body expert to assess the Vehicle's condition and the adequacy of Car Nation's repairs.

30. The independent expert advised Plaintiffs that:

    a. The Vehicle was not in a roadworthy or merchantable condition at time of the sale in September, 2013;

    b. The Vehicle was not in roadworthy or merchantable condition at the time of his inspection;

    c. The front radiator support is corroded beyond repair;

    d. Repair attempts to the Vehicle were not successful;

    e. There is an increased risk to occupants of the Vehicle in the event of a collision due to corroded structural parts; and

    f. The right running board was replaced with a salvaged part that is not correct for the application, and there was still a cracked mount.

**PLAINTIFFS' WARRANTY CLAIMS**

31. The Vehicle is a consumer product as that term is defined in § 2301(1) of MMWA.

32. Car Nation breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, because the Vehicle would not pass in trade without objection and because it is not fit for the purpose for which Vehicles are ordinarily used, i.e., safe transportation.

33. Additionally, Car Nation breached the express warranty that the Vehicle had passed a frame inspection.

34. Car Nation was given notice of the breaches of warranty and was provided with a reasonable opportunity to repair the Vehicle, but it failed to do so.

35. On July 11, 2014, Plaintiffs, by their attorney, sent notice to the defendants that they had elected to revoke acceptance of the Vehicle pursuant to Article 2 of the UCC and advised them that Plaintiffs were unable to drive the Vehicle because it was not safe to drive but that defendants could pick it up at Plaintiffs' residence.

36. Defendants have failed and refused to return the amounts paid by Plaintiffs for the Vehicle.

37. Car Nation's breaches of warranty were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiffs' interests and the injury that they sustained. Specifically, Car Nation either knew that the Vehicle had a corroded frame and falsely certified that it had passed a frame inspection, or it provided that certification without having conducted any inspection with a reckless indifference to Plaintiffs' interests.

38.     As a result of the above-described actions, Car Nation is liable to Plaintiff for their damages, including common law punitive damages, which are expected to exceed $50,000.

**PLAINTIFF'S TILA CLAIMS**

39.     The financing of the Vehicle was implemented by means of a retail installment contract between Plaintiff and Car Nation.

40.     Car Nation was obligated to provide certain disclosures under TILA.

41.     Car Nation has violated TILA as follows:

a.      It inaccurately itemized the amount financed by means of the overallowance for the Trade-In and the failure to properly account for the full down-payment;

b.      It inaccurately stated the amount being paid for the Vehicle;

c.      It failed to disclose the GAP charge as a finance charge; since Plaintiffs did not receive any GAP contract, they received no benefit from that charge, which would not have been assessed in a comparable cash transaction in that charges for "GAP" are nonsensical in such a transaction;

d.      It failed to apply the full amount paid to the purchase price, thereby increasing the amount financed; this increased amount finance should have been disclosed as a finance charge, because this amount would not have been charged in a cash transaction;

e.      To the extent that Sensible charged fees for accepting assignment of the contract, and to the extent that those fees were a portion of the increased cash

price for the Vehicle, that increase should have been disclosed as a finance charge, because this amount would not have been charged in a cash transaction; and

      f.      It failed to accurately state the annual percentage rate due to the failure to include the items described above as finance charges.

**PLAINTIFFS' RISFA CLAIMS**

42.      Car Nation's violations of TILA also constitute violations of RISFA due to the incorporation of TILA and Reg. Z into RISFA by operation of Conn. Gen. Stat. § 36a-771(b).

43.      RISFA was further violated by the failure to credit the full amount of the down payment to the transaction.

44.      Plaintiffs have restored defendants to their pre-contract position as nearly as possible by tendering possession of the Vehicle to them, and they are entitled to a rescission of the retail installment contract.

45.      Car Nation's violations of RISFA were willful.

46.      Sensible has retained the benefit of the contract notwithstanding that it has been notified that Car Nation had violated RISFA, and it is therefore barred from collecting finance charges pursuant to Conn. Gen. Stat. s36a-786.

**PLAINTIFFS' CUTPA CLAIMS**

47.      Car Nation's conduct, as aforedescribed, was unfair and deceptive and in violation of the Connecticut Unfair Trade Practices Act.

48.      Car Nation further violated CUTPA in that, shortly after purchase, Plaintiffs expressed concern that the Vehicle was not driving right and brought it to Car Nation, who re-released the Vehicle to Plaintiffs, thereby endangering them and their children.

49. Car Nation also endangered Plaintiffs and their children by releasing the Vehicle in an unsafe condition following other repair attempts, including the repair attempt after Plaintiffs discovered the corrosion.

50. Plaintiffs have suffered an ascertainable loss of money due to Car Nation's CUTPA violations.

WHEREFORE, Plaintiffs seek an order that they have no further obligation under the retail installment contract, damages, statutory damages under TILA, common law punitive damages, punitive damages under CUTPA, attorney's fees and costs.

        **PLAINTIFFS, STACY PERRACHIO AND JAMES PERACCHIO**

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn, ct02188
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel.  (860) 571-0408
    Fax. (860) 571-7457